Inc. and D'Angelo Brothers, John King, wasn't able to make it here. It is my pleasure to be here before this Honorable Court for the first time. And I, again, just enunciate that I'm glad to be here and I thank you for listening. If you would like to reserve some time, just watch your clock and you can take some time out of your main argument. I'd like to do that in three to five minutes. Thank you, Your Honor. Counsel, do you have a rationale for the decision of the question whether a person or a company or a corporation or a business entity is or is not qualified under the Federal tort claims because of its relationships to the government by contract? Yes, Your Honor. And I'd like to get right into that. What is the general line? What's the principle that we're dealing with as opposed to applying it in this case? The principle is one of statutory construction. And I believe that it was enunciated very well by Justice Thomas in the dissent of the Roland v. Men's Colony case. The enunciation of a principle in a dissent is not binding us. We're bound by the majority opinions of the Supreme Court. Yes, Your Honor. And you can have a dissent, but it may forecast some future change of mind on the mind of the Court. But it's certainly not appliable here, and I'm not going to follow up. I agree, Your Honor, but the – I believe the argument goes the presumption codified in 1 U.S.C. 1, which is the Dictionary Act. I'd like to phrase the issue before this Court as follows. Well, if I'm a Boeing airplane company and I contract to build a tanker or something for the government, and the tanker takes off and crashes, is the government responsible for the crash because of the bad design in the Boeing company? Don't get excited, Margaret. You don't work for Boeing anymore. Your Honor, I believe it depends upon the circumstances in which Boeing is – whether or not – it all falls upon whether or not they're an employee of the government. And that is a quintessential issue here, is the definition of employee of the government under the Federal Tort Claims Act, Section 2671. The analysis first starts with under the Federal Tort Claims Act, Section – I just want to interject on that. There's a further complication, which does enter in here, and that is if the design was done at the bequest of the government, that gets you into a whole other range of government contract liability, which may or may not factor into how we would analyze this. Just point that out. That's correct. And these are somewhat difficult questions to answer because right now we are actually addressing the factual agency analysis of acting on behalf of, and we're addressing the issue that Chief Judge Windmill never allowed Thomas Helicopters or DeAngelo Brothers to get to. And that was stopped short because of this matter-of-law issue that we don't even get to consider whether or not an artificial entity, i.e. Boeing or anyone else contracting with the government, was acting on behalf of the government in the scope of employment for the United States. Can you be both an agent and an employee? I mean, can an entity be both an agent and an employee? Yes, Your Honor. Under the Ferguson case, it certified Sandia National Laboratories as both an agent and employee of the government. And the Ninth Circuit decisions – And to me that they actually conflate principles. That's one of the problems with those cases. Well, it's my understanding of those cases. The – also the Logue case, the Orleans case, they look at the actual agency analysis. They both adopted the Restatement Second of Agency, and they look at and determine whether or not the activities were controlled by the government, whether or not there was that control in terms of the agency, and they fall within the employee of the government definition. The separation is whether or not they're an independent contractor. If there's enough of an agency relationship, they become an employee under the Federal Tort Claims Act, and I believe that those cases are clear. They weren't flying a government helicopter, were they? They weren't flying a helicopter maintained by the government, right? No. In this case, the helicopter was owned by – It was a speck of product to be put on the crop, right? Right. Yeah, in this case – That's all the government did. And that's enough to make the government liable? Again, Your Honor, we're getting into the facts of the case, and – I understand, but that's what we're going to – that's what we're going to ultimately deal with. Well, yes, if this Court reverses and remands to the district court, then that's what I'm asking this Court to do is that we be allowed to get to that factual analysis of the agency analysis. That's laid out in the petition for certification before this Court, and I'd refer the Court to the record for that. And I tried to be very specific and precise in those allegations, which have been unresponded to by the United States. I was expecting, you know, denied or admitted just like a regular answer to a complaint, but instead we got a form letter saying artificial entities cannot be certified under the Westfall Act. And that is an erroneous conclusion by the United States and by the district court. So for the purposes of this case, we take the facts well pleaded as true? I believe that's true, Your Honor. Speaking of the facts, I have a question that's puzzling to me in the context of this statute. Because regardless of the statute, there is this contract between the government and your company which says the contractor assumes all risks and is liable and saves the government harmless on account of damages, et cetera, et cetera. That seems to me to be directly antithetical to the United States government's waiver of sovereign immunity. Why doesn't that solve the whole problem? Again, Your Honor, these are difficult questions that I didn't anticipate because we didn't get into any of the factual analysis of the contract. And I'll answer your question, Your Honor. But none of this was brought up before the district court. And none of this has we haven't had an evidentiary hearing. We haven't broached any of these issues. Again, today on appeal was the strict legal issue of whether or not as a matter of law, an artificial person can be an employee of the government. Under the well pleading rule that I just announced to you, the contract's there. The face says what it says. You don't dispute that. Yes. And so we don't have to go to a trial to find out that that's a fact. There was a waiver in the contract, wasn't there? There is a clause in there that Thomas Helicopters, I believe, released the government from liability. Right. I guess, you know, this may be too simplistic, okay, but I look at that and I say maybe we wouldn't have to jump through a thousand hoops to decide persons and employees. Could that just solve the problem? Why or why not? I don't think that it does. I think it's premature because perhaps Thomas Helicopters has defenses to that clause in terms of whether or not, you know, depending on the circumstances of whether or not they were induced to enter into the contract, that they were under unconscionability and duress in terms of having to sign a contract with that clause in there. You plead all of those facts in your complaint? Those theories? My recollection doesn't tell me right now if they're there or they're not, Your Honor. I don't believe at this time in terms of the petition for certification that it called for pleading such allegations. The allegations were to show that they were in fact an employee of the government and that they were acting within the course and scope of their employment. But my point being in response to the question that, again, those type of issues and I see where Your Honor is going, but they haven't been raised, we haven't been allowed the opportunity to even get to those arguments yet. But, I mean, it just seems to me that if that were the case, it dovetails in with the interpretation to some degree. And that is that when you look at the Federal Tort Claims Act, of course, we're worried about government employees, however you define them, from catastrophic risk and we're going to protect them. Of course, we know that corporations already have a limited liability situation legally. But further, if the United States says to this contractor, look, you basically waive any of your claim against us, that seems to me to be consistent with reading a foreign government contract in concert with statute, which wouldn't protect a corporate entity. I mean, it just seems that they are logically consistent so that even if we don't rest it on the contract, the contract's one more piece of evidence that there's not an explicit waiver of sovereign immunity. So, I mean, I guess the specific question is because a waiver has to be so specific, it seems to me to come to your conclusion we have to jump through a lot of conniptions and hoops, which doesn't seem all that clear. So how do we solve the U.S. Supreme Court's directive, you know, that this waiver has to be explicit? You know, maybe, Mr. Shosker, we ought to go back to thinking the landowners sued the United States for this damage to their crops. And they also sued you. That's correct. And the other people. That's correct. So whatever those plaintiffs said in their complaint against the government, they said or whatever. Right. But as far as you being in the case, you wanted to get out on the basis that you were acting as an agency, you were a person acting as an agency for the government. So you asked the government to, or the Attorney General, to make that certification to get you out of the case. And the Attorney General, I guess it was, said they wouldn't do it. That's correct. Okay. Now, and that's what we're considering here is whether they should or should not have done that. It doesn't have anything to do with what the complaint is by the individuals against the government. That's correct. And that the government's response to our petition for certification said we will not certify you because you're an artificial entity. Right. Period. And or they had a little blip about and you're a contractor. They didn't bring up and you waived sovereign immunity or that there's this release in the contract. I mean, that may be an issue for discussion in terms of form over substance. Are there any defenses to that? Do we need to get into the actual case? Did they say, let me just stop there just to clarify and maybe you can help me. Did they say you're a contractor or did they try to rely on the independent contractor part of this Westfall arrangement? I believe the letter just states to the effect that and you're in a contractor relationship with the government. And that has been blurred by the government. And that has been also. We'll ask the government about that. Okay. Okay. And I really, I really, I appreciate the questions. But as a matter of law, because I believe this is an important issue to decide, they're arguing that the Westfall Act itself, that the findings in the Westfall Act have somehow eradicated or made an explicit act of Congress saying that an artificial person cannot be an employee of the government and is not entitled to even be considered for certification as an employee of the government under the Westfall Act. However, if you look at the Westfall Act itself, it only amended section 2679. Section 2679 only deals with the scope of employment. It was a reaction to the Westfall v. Irwin case, which limited to those acts of an employee acting, doing, performing a discretionary function. Section 2679, as amended, says any employee, I quote, any employee acting within the scope of the government. It consistently uses the word employee. And to Your Honor, Justice Beezer, I believe it is, question in terms of, it's important here to draw arrows. I posit this to the Court. If this was an action just between the plaintiffs against the United States brought under the Federal Tort Claims Act, 1346B, which provides for the exclusive remedy against the government and the government is liable for the negligence of an employee of the government, the definition of employee of the government is found in the Federal Tort Claims Act 2671. That defines persons acting on behalf of the government. Persons, then, according to our rules, our canons of statutory construction, you go to 1 U.S.C. 1, which includes associations, partnerships, corporations, et cetera. Now, going back to Justice Thompson's questions in terms of we must, I'm sorry? That's Beezer. Oh, excuse me. Okay. Justice Beezer, your question in terms of we must follow the Supreme Court law and the law that's before us, those laws are all quite clear that there is a presumption that we follow the canons of statutory construction at 1 U.S.C. 1 unless the context indicates otherwise. And in Rowland, in the United States Supreme Court's decision, it provides that the word context in 1 U.S.C. 1 means the text of the act of Congress surrounding the word at issue or the text of other related congressional acts. The word at issue here is persons. Persons does not show up in the Federal Tort Claims Act 1346B and said employee of the government shows up. In 2671 and 2672, employee of the government shows up, not persons. Counsel, going back just a second. It seems to me on one side of the argument I'm hearing, there is no contract. There's some kind of employee status. If you're going to argue that there's a relationship between the helicopter and the government, I take it that that relationship is founded in a written contract, right? That's absolutely correct. All right. Now you're arguing for protection that Judge McKeown indicated to you is expressly denied. And again, in terms of the ---- I'm having trouble with that. Maybe you've got an explanation that makes sense, but I just want to alert you in your argument. I'd sure like to hear about it. And again, these are difficult questions of the factual analysis because the facts were never raised before the district court. We've never had this. And I understand ---- Then you have no standing because you don't have a contract, right? No, Your Honor. I'm not positing that and I wouldn't agree with that. Assume that you have a relationship because of the contract. Deal with the contract. We have a contract between the United States and Thomas Helicopters. DeAngeli Brothers, Your Honor, does not have a written contract. What did you say with respect to liability? Your Honor, DeAngeli Brothers has no written contract. And I'm not sure that the Court is aware of that. We have a contract for Thomas Helicopters, Inc. and the government. DeAngeli Brothers, who's also an appellant, has no contract. There is no written language of releasing the government. And again, I posit to the Court, is that enough? And at this point in time, I can just not tell you in terms of certainly I would think that Thomas Helicopters would be allowed to raise legal defenses to the enforceability of that clause in the contract and also provide evidence at an evidentiary hearing, which is provided under the Federal Tort Claims Act in these situations for whether or not the employee was acting on behalf of the government in terms of showing the control by the government, the day-to-day activities. The government hired Thomas Helicopters, Inc. They sought them out. It was their helicopter. But they provided the oust. They told them how much oust to apply to the land. They told them when to fly. They told them where to fly. They controlled when they were to stop flying, if the wind was picking up. They told them we have instances if it was raining or snowing to stop the application. They controlled everything. Thomas Helicopters was a mere tool in the government's hand. And just because Rod and Dale Thomas signed a piece of paper saying we're incorporated, is that enough under the policy and protections, the explicit provisions of the Federal Tort Claims Act that they are no longer protected in terms of tort, no longer have that tort immunity under the Federal Tort Claims Act? Also, the flip side of that is under this rationale, as the findings indicate in the purpose, the twofold purpose, the second purpose is to protect persons injured by employees of the government. Persons certainly includes the Dictionary Act's meaning. In this case, we have farmer groups, corporations, limited liability companies, partnerships. Those are all persons suing the government. And so in terms of the consistency argument, the application of 1 U.S.C. 1 to persons, it must also be the same parity must be given to persons of the definition and persons in the definition of the term that we're talking about, who are currently in the United States. That's the first part of it. Maybe you want to reserve the remaining time for rebuttal. Thank you, Your Honor. We'll hear from the government. Good morning. I'm David Fishback, I represent the United States in this matter. It is black-letter law, as you pointed out, that waivers of sovereign immunity against the United States are to be strictly construed. The issue here is, of course, the pure legal issue is whether artificial entities are ever eligible for certification under the Westfall Act. The only reason that I think at least the government mentioned anything at all about the underlying facts was that in an appellant's brief, they set forth in quotes that they were, quote, an employee of the United States. We felt honor bound to let the Court know that based on what was in the Thomas Helicopter's petition, that there was nothing in any contract which ever referred to them as employee of the United States. And, in fact, we pointed out the provisions in the Thomas Helicopter contract which they put in their petition for certification. So there are no facts other than the facts that Thomas Helicopter itself set forth. D'Angelo did not set forth any contractual materials in their petition. What we have here is, again, a pure legal issue. And this question of whether an artificial entity could ever, as a matter of law, be certified has rarely been litigated. Indeed, it's only been litigated, the issue has only been joined twice in Federal court. The first time, in the Vallier case, the district court ruled that an artificial entity could, as a matter of law, be certified, but said that in this case, the facts show that it was not an employee. In that case, this involved the Jet Propulsion Laboratory down in Pasadena. We had made the pure legal issue and also made the factual argument. The case went up to the Ninth Circuit. The Ninth Circuit said, well, on these facts, it was a heavily litigated matter on facts. There's certain Cal Tech certainly is not an employee. And they said, we don't have to reach the pure legal question. We have been concerned about the kind of maneuver that corporations could go, corporations contracting the government could do if, in fact, they would be eligible for certification under the Westfall Act. Indeed, in the Cal Tech situation, they were able to stop dead the entire litigation of Cal Tech for two years while this matter was litigated, because in this circuit, if there's a denial of certification under the Westfall Act, you get immediate appeal, and that, of course, can stop everything in its tracks. That is not what Congress intended, and we at the Department of Justice felt very That is why, when the request was made from Thomas Helicopters and D'Angelo Brothers Corporations, we said we didn't want to get into the whole factual issues. We just said, as a matter of law, you're not eligible for a Westfall Act certification. And that's what we said. Can you give me an example of some corporations that act primarily as instrumentalities or agencies of the United States? Well, there are very few. Indeed, in this circuit a number of years back, there was a case in which the question was whether the Federal Reserve Board banks were instrumentalities of the United States, and the Ninth Circuit ruled that they were not. It is a very, very difficult standard to meet. And, indeed, if appellants' positions were accepted, that would mean that the Westfall Act was an end run around the settled law that to be determined to be an instrumentality of the United States requires a very, very difficult standard, and that Congress somehow intended to undo all that with the Westfall Act. Let me just ask about this. Let's just say there were one or two we could identify somewhere. And it's not the Federal Reserve Bank, but it's something else. So then the one subsection of the statute would read persons acting on behalf of this corporation, Corporation A. So I was just thinking it wouldn't really make sense to interpret that to mean instead of person, corporation acting on behalf of the corporation. It would seem to be that would be inconsistent, and I'm wondering if that's an easier resolution to this problem than all this sort of hand-wringing. I'm not sure it's a question of hand-wringing, Your Honor. I think what we have, if I understood your question correctly, and I'm not certain I did. Let me just be a little clearer. Since you could have a corporation that would be a Federal agency, so then you would have under this, you could have a person acting on behalf of the corporation. Yes. So easy, easy situation is a person being an employee of this magic corporation. Correct. Okay. But I'm just wondering, as a matter of statutory interpretation, why maybe it has been argued why we wouldn't just say, well, if you insert corporation instead of person, corporation acting on behalf of a corporation, that wouldn't make any sense. Exactly. But I didn't see that argument made. Maybe I'm missing something. Well, we were trying to keep the argument as plain as possible and run it right through the Rowland analysis. But I could digress into that for a moment. Essentially what you have is that if a corporation was deemed to be an instrumentality of the United States, that would not mean that the United States would then do their entire defense. What it means is that that corporation could go into court and say, you must dismiss the suit against us because we're an instrumentality of the United States. It wouldn't mean the United States then steps into their shoes in terms of defending them, which is what the Westfall Act does. It just means that this corporation, okay, you're dismissed. But, you know, you bear your legal fees, legal fees for cost of doing business. That, I think, is the answer, I believe is the answer to your concern on that point, Judge McKeown. The broader picture and the question of what did Congress intend is fortunately set forth in the congressional findings. And I'm going to talk about what led up to the Westfall Act because the congressional findings talk about, specifically talk about what led up to the Westfall v. Irwin decision and why the Congress acted as it did. Now, can we look at the congressional findings? The Dictionary Act says we have to look at context. The Supreme Court says context excludes legislative history. Legislative history is not the same thing as congressional findings. The legislative history is that, for example, Senator Brasley made comments about how individual employees are just going to be totally messed over. And we recognize that that is background, but it's not going to come within Rowland. However, congressional findings are voted on by the Congress. It's part of the statute. Public Law 100-694 is part of the statute enacted by Congress. So when the – it might have even been a unanimous vote in Congress. I'm not sure there was overwhelming support for it. But when the members of Congress voted on the statute, they voted for the operational part and they also voted for the findings. So it would be very, very clear to everyone why they were doing what they were doing. So the fact this is codified as a note, is my understanding, this finding that you're talking about, does that have any legal significance? It's codified as a note because when you're actually dealing with the Act, you don't need to look at the statute, that part of the statute. But it is a public law. Public Law 100-694, and it's at Statutory Appendix Tab 15. This is a law. It's not just legislative history. Congress voted on this and said this is what we believe. Again, not just an individual statement by Senator Grassley or Congressman Wolf, but this is what Congress voted on. And if the Court wishes, I could brief this later. We – leading up to the argument, we thought this might be a question. We researched it and we found out that it's very clear that congressional findings are, in fact, part of the law. It is a statute voted on by Congress. What have you got in your congressional findings that wins the case for you? I believe we win the case even without the findings, but the findings make it, we believe, really, really easy. And this is why I'd like to go back just for a moment to talk about the Westfall v. Irwin litigation. Prior to 1988, it was generally assumed that Federal workers were immune from all tort suits arising out of actions within the scope of their employment. We exhaustively researched this. We could not find a single case that ever applied this common law rule to artificial entities who contracted with the United States. So it was clear what we – what the Court was facing in 1988. In Westfall v. Irwin in 1988, the Supreme Court held that this common law immunity only extended to discretionary conduct. Now, the Court plainly understood that this might create some problems, but it felt that this is as far as the common law will go, but explicitly said, Congress, if you want to give broader protections to these Federal workers, please do so. Later that same year, Congress acted. Congress acted very, very quickly. And when you look at these factual findings I'm going to talk about in a moment, it fits in precisely what Rowland tells us to do, which is says, paraphrasing Rowland in 506 U.S. 202, say, viewing the Westfall Act in our case against this background tells us what Congress was thinking in terms of natural persons only. And here we're talking about what is, again, in statute that Congress passed. At – in the findings, the Congress said at – I'll start with section 2A of the findings. And we put these – these are also at pages 13 and 14 of the government's brief. The Westfall – the Court – the Congress noted that the Westfall Court had held that, quote, Congress then said the same thing in section 2B in the – in the final purpose. Purpose of the act is to protect Federal employees from personal liability for common law towards committed within the scope of their employment. Congress repeatedly uses phrase personal liability. Indeed, Congress at section 2A of the findings talks about the pre-Westfall v. Irwin regime. That it protected – was protecting workers from personal liability. And then it referred to at 2.4 and 2.5 that this erosion of immunity resulting from Westfall v. Irwin was creating an immediate crisis involving the prospect, again, of personal liability and protracted personal tort litigation for the entire Federal workforce. Congress made it clear that the Westfall Act was to apply to individuals. The phrase personal tort liability makes it very clear. If Congress was somehow thinking, gee, you know, we're going to protect artificial entities as well, it would have said just common law immunity, perhaps, or personal or corporate liability. But it said personal liability. And that made, when you look at everything that led up to Westfall v. Irwin, all the litigation leads up to it. Congress responds to the decision and what it was about there. It shows, we believe definitively, that we're just talking about workers. And it's not just the findings that established this. If you look at the operational language of the FTCA, Section 2679C, which talks about Seuss to which the Westfall Act would apply, talks about Seuss brought against quote any employee of the government or his estate. Well, of course, artificial entities don't have estates. The FTCA notably only uses personal pronouns in describing employees, never using the word if. The point also is that, and this perhaps is the most significant point in terms of the operational part of the Westfall Act, there is only one place in the entire FTCA where the word person is ever used in the context of employee. Every place else in the Act, when they talk about employee, they talk about employee and then talk about with his or her. The basic definition set forth in 2671 is tautological. It defines employee as an employee. Then there's later language, and this is the language that appellants try to use. It says language refers to, quote, persons acting on behalf of a Federal agency in an official capacity. This phrase has been already explained by the Supreme Court. In Loeb v. United States, the Court rejected an effort to use the phrase to circumvent the FTCA's contractor liabilities exception, and Loeb explained that the phrase appeared, quote, and this is at page 412 U.S., page 531, the phrase appeared to, quote, be designed to cover special situations such as a dollar-a-year man who is in the service of the government with or without pay or an employee of another employer who is placed under direct supervision of a Federal agency pursuant to a contract or other arrangement. An artificial entity that contracts with the United States cannot be an employee of another employer. In fact, it is the employer contemplated in what the Supreme Court explained in Loeb. In any event, this one use of the word cannot be used to trump the entire, all the rest of the congressional language in the Westfall Act, which was passed, and again, in direct response to Westfall v. Irwin. That's why we, in response to, you know, coming up with new cases, we have in our letter we submitted to the Court the Horton decision, which, in quotes, old Supreme Court statement, saying words, just because you have a word meaning one thing in one place in the statute doesn't necessarily mean it has to mean the same thing every place else. Generally, in the FTCA, when the word person is used, it's used in terms of people who can sue the United States, and that's what appellants have been pressing. But when the word employee is used, it's word employee is used, not person. There's one place where it's used for the statute to make sense that can't include the artificial entities, and particularly it can't include it when you're looking at what Congress was about in the Westfall Act. Another point that is quite significant, when Congress wanted to extend Westfall Act certification to artificial entities, it specifically did so. If you look at our brief at 1803, you note that in the Kitchen and Bueno cases, there, 48 U.S.C. 233G specifically said that those artificial entities, those that are health care organizations, could in fact be part of the, be certified. But that was an exception to the general rule that you're talking about real people. The – I'm running out of time. I want to wrap up a couple of things. One, I want to point out that there are no dire consequences for artificial entities if they don't get certification. This kind of litigation has gone on for a couple of generations now. Artificial entities don't get certified as employees. They have the potential of a corporate form. When they negotiate contracts, they typically get insurance, or they can negotiate a high enough price to cover any potential liabilities. Litigation is a cost of doing business, and you can't have an end run around that. Indeed, they also have other – they have to have defenses. If a company is specifically following what the government wants to do, depending on State law or Federal law, they may have a defense to the suit. But they have to defend themselves, not the United States. That's part of the cost of doing business. And finally, what I would like to close with is the horrible hypothetical, which could – is not so hypothetical when you look at how litigation is often done. If the Pallant's position was correct, and corporations were eligible as a matter of law to seek certification under the Westfall Act, then any time a large government contractor was sued by citizens – perhaps this contractor really messed up and really hurt people – they could stop the litigation dead in its tracks for a year or two simply by asking for certification. On the facts, the government would say, no, you're a contractor. You're not an employee of the United States. But because they – this would be considered a final order under the Arthur and Pelletier cases, then they go to the Court of Appeals. And the normal standard for that is that you stop the – you can stop the litigation because of – you know, the whole point of the automatic final order is that you're going to bankrupt this poor GS11. Well, I'm not sure you're going to bankrupt Lockheed. Congress didn't intend to radically restructure the whole way the FTCA is done and the way litigation against government contractors is done through the Westfall Act, which, as the statutory findings themselves set forth very, very clearly, demonstrate that this Act was done to protect individuals working as employees for the Federal Government. But I – and this – your interpretation would do nothing to undermine the government contract defense. Not at all.  Indeed, if someone has a government contractor defense, they can stop the litigation and certainly raise it. And that is just another example of the – of the protections that contractors – artificial entities do have when they – when they contract with the government and they are sued if they – if that's their fit, the government contractor defense, whether by Federal law or by State law. Indeed, the Nielsen case, which we cite along with the Boyle case at our brief, page 1703, the Nielsen case was an – was an Idaho case where a company was following very specific instructions and there was law there that if, in fact, the facts were as they said they were, then they had a total defense to suit. No other questions? Thank you. Thank you very much. Your Honors, I'd first like to point out a – somewhat of a misrepresentation by the government in the Logue case. They've represented it in the brief and then he raised it again in oral argument as if it was the holding of the Supreme Court in Logue. And I refer the Court's attention to 412 U.S. 531 and from the quotation that the government keeps relying upon, it can – it can have quite a significant impact. And I quote quickly from the decision, One of the appendices to the hearings on these bills compares the provisions of H.R. 6463 containing the acting on behalf of language with previous drafts and states that employee of the government in the present bill is defined to include uncompensated or temporary officers or employees of the United States. Hearing Supra at 58. The committee's observation thus affords some support to the government's contention that the language is designed to cover special situations such as a dollar a year man who is in the service of the government without pay or an employee or another employer who is placed under direct supervision of a Federal agency pursuant to contract or other arrangement. It is the government's contention about this language about a dollar a year man. This was not the Supreme Court's holding in this case or their language in this case. I wanted to point that out. I think that's important. Additionally, the government did not address the cases being a Marine versus American foreign shipping wherein American foreign shipping was certified under the Westfall Act as an employee of the government wherein that case the district court said United States shall cause why you should not be substituted as a defendant. The United States did not respond because American foreign shipping is an artificial entity. The United States instead relied solely upon the exception under total immunity for a libel action. But they did not raise that defense. And they came in, they had the opportunity, and the court then went through the specific analysis and found that AFS was acting on behalf of the government and was an employee of the government under the definition of 2671, was certified under 2679, AFS was dismissed from the action. And the whole action was then dismissed because the United States also couldn't be brought in as a defendant. The United States also doesn't address the case Pervis which also came after the Westfall Act in which the Attorney General certified Carpenter Technology as an employee of the government. Thank you. And we have your point in mind, Mr. Schlossberg. Thank both counsel for argument, also both of you for the briefing in this case. Thank you, Your Honor. Very interesting statutory question, and we'll adjourn for the morning.
judges: Beezer, Thompson, McKeown